UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH COLVIN, JR.,

   Plaintiff,           Case No. 1:13-CV-465

v.                 HON. ROBERT J. JONKER

KARL FOY, et al.,

   Defendants.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

Plaintiff Kenneth Colvin has filed an objection (docket #26) to Magistrate Judge Hugh W. Brenneman's Report and Recommendation issued February 10, 2014 (docket #25). The Report and Recommendation recommends that this Court grant Defendant Karl Foy's motion for summary judgment (docket #13). When a party objects to a magistrate judge's report and recommendation, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the magistrate judge that is relevant to the findings under attack. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After conducting a de novo review of the Report and Recommendation, Colvin's objections, and the pertinent portions of the record, the Court will adopt the Report and Recommendation.

# I. Background

This Court previously summarized Colvin's allegations as follows:

Plaintiff Kenneth Colvin, Jr. presently is incarcerated at the Carson City Correctional Facility, though the actions about which he complains occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). Plaintiff sues ICF Classification and Transfer Director Karl Foy and ICF Grievance Coordinator Myken D. Breedlove. Plaintiff alleges that in 2011, shortly after he was released from administrative segregation, he wrote several letters to Defendant Foy, seeking a prison work assignment. On March 24, 2011, Foy responded, saying he had no work for Plaintiff at that time. On April 8, 2011, Plaintiff learned that Foy had assigned several prisoners work assignments, despite the fact that those prisoners had come from administrative segregation more recently than Plaintiff. Plaintiff filed a grievance against Foy. When he was reviewed on the grievance on April 19, 2011, Plaintiff complained to Lieutenant S. Cheeks that Defendant Foy was denying him a work assignment in retaliation for Plaintiff's having filed several grievances against Foy. Cheeks denied the grievance, telling Plaintiff that Defendant Foy had explained that he wanted to see Plaintiff misconduct-free for six months before giving him a work assignment. Plaintiff completed a Step II appeal and mailed it to Defendant Breedlove.

On May 5, 2011, Plaintiff received a callout dated May 6, 2011, for a work assignment as a food-cart pusher. In that position, Plaintiff was made to work with Prisoner Williams, the prisoner with whom Plaintiff had had a fight on December 25, 2010, which had resulted in Plaintiff's administrative segregation. Plaintiff contends that he and Williams were likely to have another confrontation, but Plaintiff worked the job with Williams until May 22, 2011. Plaintiff claims that Foy made the assignment, despite knowing the history between the two prisoners and in violation of regular MDOC practice. Plaintiff filed a grievance, which was heard at Step I by Lt. Cheeks on May 22, 2011. Cheeks concluded that the work placement was not appropriate. Plaintiff contends that the work assignment was retaliatory and that Foy was deliberately indifferent to Plaintiff's safety.

On October 25, 2011, Defendant Foy ordered Plaintiff transferred to the Chippewa Correctional Facility (URF), a place Plaintiff claims is infamous for the physical and mental abuse of prisoners, particularly African-Americans and those who have filed grievances and lawsuits against MDOC employees. Plaintiff complains that Foy also failed to make a notation on Plaintiff's transfer order indicating that Plaintiff was currently receiving a Kosher diet. Plaintiff claims that failure to make the notation resulted in an unnecessary delay in Plaintiff's receiving a Kosher diet at URF. In addition, Plaintiff claims that the transfer was made just days before Plaintiff was eligible to receive a three-point reduction for working a job assignment for six

months. Plaintiff alleges that the transfer was made in retaliation for Plaintiff's prior grievances against Foy.

Plaintiff next alleges that, during the entire period of his stay at ICF, he had a problem with the grievance process under Defendant Breedlove. Plaintiff filed a complaint against Breedlove on November 1, 2010, alleging that she had failed to carry out her duties by processing Step I grievances and failing to send Step II appeals. Plaintiff also raised the issue at the November Warden's Forum. On May 20, 2011, Plaintiff received correspondence from the Michigan Office of the Legislative Corrections Ombudsman, thanking Plaintiff for submitting his concerns and indicating that an investigation had been initiated to improve the grievance process statewide and that ICF had been contacted.

Plaintiff filed a grievance against Defendant Breedlove on June 19, 2011, and, on June 21, 2011, Plaintiff was placed on modified grievance access. [FN 1] Plaintiff complains that, while he was on modified access, Defendant Breedlove routinely ignored his requests for grievance forms, including his request for a form to grieve his placement on modified access. On June 7, 2011, in response to Plaintiff's request for numerous Step I and Step II grievances and appeals forms, Breedlove told Plaintiff to limit his requests for grievances to one per day. Plaintiff alleges that, when he complained about Breedlove's handling of his grievances, Lt. Cheeks told Plaintiff that she suspected Breedlove was withholding grievances to anger Plaintiff. Plaintiff complains that Defendant Breedlove's interference with his grievances was done in retaliation for Plaintiff's prior grievances against Plaintiff.

Plaintiff seeks compensatory and punitive damages in the amount of $500,000.00.

[FN 1 Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

(Opinion, docket #5, Page ID 57–59.) The Court dismissed Colvin's claims against Defendant Myken Breedlove but held that Colvin had alleged sufficient allegations to warrant service of the Complaint on Foy. (*Id.* at 62.)

3

## II. Colvin's Objections

In the Report and Recommendation, the magistrate judge recommends that this Court grant Foy's summary judgment motion because Colvin has failed to allege any "adverse action" taken by Foy within the meaning of the First Amendment. Colvin objects that the magistrate judge erred in finding that Foy had not taken any "adverse action."[1]

## III. Discussion

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an "adverse action" that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) this adverse action was taken at least in part because of the exercise of the protected conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).

---

[1]Colvin also objects that the magistrate judge failed to address his Eighth Amendment claim for deliberate indifference on the basis of his work assignment with another prisoner. (Objection, docket #26, Page ID 169.) Colvin argues that he raised this claim in his response brief to Defendant's motion for summary judgment. (*See* docket #22, Page ID 148–49.) Even assuming that Colvin's argument in his brief is sufficient to put Defendant and the Court on notice that Colvin alleges an Eighth Amendment claim, Colvin's claim must fail at summary judgment because he has failed to show that Foy's actions were deliberately indifferent. Foy has produced an affidavit averring that Foy was unaware that Colvin was having problems in his work assignment until after Colvin transferred to a new facility. (*See* docket #14-2, Page ID 94.) Colvin has not produced any evidence suggesting that Foy's actions were made with "actual awareness of a substantial risk of serious harm." *See Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Colvin first objects to the magistrate judge's conclusion that he has failed to allege an adverse action related to his claim that Foy did not give Colvin a work assignment immediately upon his release from administrative segregation. As the magistrate judge observed, prisoners are not employees of the Michigan Department of Corrections and they do not have a constitutional right to prison employment or a particular prison job. (Report & Recommendation, docket #25, Page ID 162.) Colvin objects that a prison official may not retaliate against a prisoner by taking away the privilege of a work assignment. Colvin's objection is unpersuasive because Colvin has not alleged or supported that Foy's failure to assign Colvin a prison job constituted an action so adverse that it would deter a person of ordinary firmness from continuing to engage in the protected conduct of writing grievances. Quite the opposite, Colvin has not only continued to write grievances but has filed a civil rights lawsuit against Foy. Colvin has not shown that Foy's failure to assign Colvin a job was an "adverse action," for purposes of First Amendment retaliation and Foy is entitled to summary judgment.

Alternatively, Foy argues that Colvin has not established the causation element of a First Amendment retaliation claim. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). In this case, Foy has produced an affidavit stating that, as of March 24, 2011, Colvin had been in and out of segregation three times in one year. (Foy Aff., docket #14-2, Page ID 92.) "When prisoners exhibit negative behavior such as this, it is routine that they are given a period of time in general population with misconduct-free behavior to adjust and demonstrate willingness to obey the rules before being given another opportunity to hold a work assignment. This is not done as retaliation but in an attempt to modify the prisoner's otherwise

negative behavior." (*Id.*)  Foy's non-retaliatory purpose is corroborated in part by Colvin's own Complaint, which indicates that Colvin's grievance against Foy was denied by Lieutenant S. Cheeks on April 19, 2011 because Foy had explained that he wanted to see Colvin misconduct-free for six months before giving him a work assignment.  (Docket #1, Page ID 3.)  Foy is entitled to summary judgment on this claim.

Second, Colvin objects to the magistrate judge's recommendation that his second retaliation claim be dismissed for failure to show an adverse action.  Colvin alleges that Foy retaliated against Colvin's filing of grievances against Foy by assigning him to a work assignment with another prisoner with whom Colvin had an altercation resulting in administrative segregation.  The Court will overrule Colvin's objection because he has failed to show that his assignment with the other prisoner was an "adverse action," that would deter a person of ordinary firmness from continuing to engage in the protected conduct of writing grievances.  In objection, Colvin argues that Foy acted deliberately, not that the assignment was an adverse action.  Moreover, even if the Court assumed that it were an adverse action, Colvin has not established causation.  Foy has produced an affidavit stating that he was unaware that there was a problem with Colvin's work classification until after Colvin was transferred to another facility on July 22, 2011.  (Foy Aff., docket #14-2, Page ID 94.) Colvin's bare assertion that Foy acted in retaliation is insufficient to overcome summary judgment on these facts.

Finally, Colvin objects that the magistrate judge erred in finding that Colvin failed to establish an adverse action for his third claim—that Foy retaliated by transferring Colvin to Chippewa Correctional Facility.  "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a

prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005). "A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 F. App'x 375, 378; *cf. Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison with a State ...."). Where, however, a transfer to a different facility has foreseeable consequences that inhibit a prisoner's access to courts, a transfer may constitute an adverse action for a retaliation claim. *See Siggers-El*, 412 F.3d at 702 (observing that the plaintiff was not only transferred but suffered a number of foreseeable consequences inhibiting his access to the courts, including access to his attorney and loss of a "high paying job" he needed to pay his attorney).

In this case, Colvin objects that he has established foreseeable consequences because he was transferred to a facility notorious for its "open prejudice/bias against prisoners . . . particularly African American prisoners who has [sic] a history in filing complaint/grievances and civil suits against the [MDOC] and its employees." (Docket #26, Page ID 170.) Colvin's objection falls short of establishing an "adverse action." Colvin has not produced concrete examples of how he was adversely affected by his transfer, as did the plaintiff in *Siggers-El*. His bare assertion that the facility has a notorious reputation is inadequate to establish the type of foreseeable consequences contemplated by the court in *Siggers-El*. Foy is entitled to summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Colvin's objections (docket #26) are overruled.

**IT IS FURTHER ORDERED** that the Report and Recommendation (docket #25) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (docket #13) is **GRANTED**.

A separate judgment will issue.


Dated:  March 21, 2014 /s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE